**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re the Application of | |
| ALBERTO EUGENIO FONT PAULUS, | CIVIL ACTION NO. 3:12-CV-986 |
| Petitioner for P.F.V., | |
| | (JUDGE CAPUTO) |
| v. | |
| ANA VIRGINIA VITTINI CORDERO, | |
| Respondent | |

## MEMORANDUM

Before the Court is Petitioner Alberto Eugenio Font Paulus's Motion for an Award of Attorneys' Fees and Costs for Return of Child Pursuant to Convention Article 26 and 42 U.S.C. § 11607. (Doc. 30.) In its Memorandum (Doc. 22) and Order (Doc. 23) of June 29, 2012, the Court granted Mr. Font Paulus's Verified Petition for Return of Child to Petitioner Under the Hague Convention (Doc. 1) and ordered him to apply for attorneys' fees under 42 U.S.C. § 11607 within fourteen days. Respondent, Ana Virginia Vittini Cordero, argues that an award of attorneys' fees for Mr. Font Paulus's counsel would be clearly inappropriate because he was represented on a pro bono basis and a fee award would prevent her from providing for herself or her two minor children. Because she has not shown that it would be clearly inappropriate for the Court to order her to pay the necessary expenses incurred by or on behalf of Mr. Font Paulus in this matter, his motion will be granted.

## BACKGROUND

P.F.V. is the minor daughter of Petitioner Alberto Eugenio Font Paulus and his ex-wife, Respondent Ana Virginia Vittini Cordero. On May 24, 2012, Mr. Font Paulus filed his Verified Petition for Return of Child to Petitioner Under the Hague Convention. (Doc. 1.) The Court held an initial hearing on the matter on May 31, 2012. Following that hearing,

the Court entered an Order declaring that Mr. Font Paulus had established his *prima facie* case in support of his Petition under the Convention and that a hearing would be later held for Ms. Vittini Cordero to show cause why the Petition should not be granted. (Doc. 11.) The Court also ordered that she turn over her passport and P.F.V.'s passport to the United States Marshals and remain in the Middle District of Pennsylvania while the Petition was pending. (*Id.*) On June 26 and 27, 2012, the Court held a hearing for Ms. Vittini Cordero to show cause why the Petition should not be granted. The Court granted the Petition on June 29, 2012, finding that Ms. Vittini Cordero wrongfully retained P.F.V. in the United States. (Doc. 22 at 17.) The Court ordered that P.F.V. be returned to the Dominican Republic in the company of Mr. Font Paulus and directed him to submit an application for attorneys' fees under 42 U.S.C. § 11607 within fourteen days. (Doc. 23.) On July 13, 2012, Mr. Font Paulus filed his motion for costs and attorneys' fees necessary for the return of P.F.V. (Doc. 30.) He seeks for Ms. Vittini Cordero to pay the necessary expenses incurred by him or on his behalf in this matter: $7,251.57 in costs and $36,990.00 in attorneys' fees. The motion has been briefed and is now ripe for the Court's review.

## DISCUSSION

Costs and fees are explicitly provided for under the Hague Convention on Civil Aspects of International Child Abduction (the "Hague Convention" or "Convention") and its implementing statute, the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. § 11601 *et seq*. ICARA provides, in relevant part, that:

> Any court ordering the return of a child pursuant to an action brought under [ICARA] shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of the proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate.

42 U.S.C. § 11607(b)(3). The purpose of shifting expenses to the abductor is both "to restore the applicant to the financial position he or she would have been in had there been no removal or retention, as well as to deter such conduct from happening in the

2

first place." 51 Fed. Reg. 10494-01, 10511.

### A. Costs

Mr. Font Paulus seeks reimbursement of $7,251.57 in costs, $1,704.50 of which he incurred and $5,547.07 of which was incurred by his New York counsel, Vanessa Nadal, Esq. and Tracy Schaffer, Esq. of Jones Day. He states that he spent $1,704.50 on travel and lodging costs, including: (1) round trip airfare for his flights to and from the United States for the June 2012 hearing; (2) airfare for P.F.V.'s return flight to the Dominican Republic; (3) round trip bus fare to and from Wilkes-Barre, Pennsylvania for himself, his sister, and her husband (who served as a guide and translator) for the hearing; (4) round trip bus fare to and from Pennsylvania for himself, his sister, and her husband to pick up P.F.V.; (4) return bus fare to New York for P.F.V.; and (5) his lodging in Wilkes-Barre for the hearing. (Doc. 32 at 6.)

Attorneys Nadal and Schaffer seek reimbursement of $5,547.07 for various necessary expenses incurred on Mr. Font Paulus's behalf in this matter, including: (1) lodging in Wilkes-Barre for the hearing; (2) certified English translations of the Dominican court orders and laws appended to the Petition and Spanish translations of the Petition and Memorandum of Law for Mr. Font Paulus to verify; (3) court filing fees; (4) a translator at the hearing; and (5) the courier service that obtained P.F.V.'s passport from the United States Marshals on Mr. Font Paulus's behalf and verified that Ms. Vittini Cordero had not fled with P.F.V. following her failure to answer Mr. Font Paulus's phone calls for three days following the Court's June 29, 2012 Order. (Doc. 31 at 4; Doc. 32 at 6–7.) Mr. Font Paulus notes that neither he nor his counsel are seeking reimbursement for other costs that courts have found to be compensable under ICARA, including costs for copying, long distance calls, mileage, meals during the hearing, legal research costs, or postage or shipping charges. (Doc. 32 at 7.)

Ms. Vittini Cordero challenges Mr. Font Paulus's expenses for lodging, transportation, interpreting and translation services, court costs, and post-hearing investigatory and courier costs on the grounds that they are not necessary. Her

3

arguments will be addressed in turn.

### 1. Lodging Costs

#### a. Mr. Font Paulus

Ms. Vittini Cordero challenges Mr. Font Paulus's lodging expenses of $244.20 because he stayed at the Ramada Wilkes-Barre for four nights (June 23–26, 2012) for the two-day hearing (June 26–27, 2012). (Doc. 33 at 4.) She contends that she should only be responsible for $61.05 – the cost of one night's stay at the Ramada. (*Id.*)

The Court agrees with Ms. Vittini Cordero that it would be clearly inappropriate to order her to pay for Mr. Font Paulus to stay in Wilkes-Barre for four nights. Although the Court finds that it was reasonable and necessary for Mr. Font Paulus to stay overnight in Wilkes-Barre on June 25 and 26, 2012, the nights before the first and second days of the hearing, it was not necessary for him to do so on June 23 and 24, 2012. Therefore, Ms. Vittini Cordero will be ordered to reimburse Mr. Font Paulus $122.10 in lodging expenses – his cost of staying in the Ramada Wilkes-Barre on June 25 and 26, 2012.

#### b. Attorneys Nadal and Schaffer

Ms. Vittini Cordero also questions the necessity of the $641.56 in lodging expenses incurred by Attorneys Nadal and Schaffer, who spent the night of June 25, 2012 in the Hilton Garden Inn Wilkes-Barre, which cost $132.09 per room, and the following night in the Holiday Inn Express Wilkes-Barre East, which cost $188.69 per room. (*Id.* Doc. 33 at 4–5.) Ms. Vittini Cordero argues that she should only be responsible for $122.10 – the cost of renting two rooms for one night at the Ramada Wilkes-Barre. (*Id.* at 5.) She contends that Attorneys Nadal and Schaffer did not need to stay in a hotel in Wilkes-Barre on June 25, 2012, the night before the first day of the hearing, because they could have driven the 120 miles from Manhattan to Wilkes-Barre the following morning. (*Id.*) She reasons that she should only be responsible for the cost of one night's stay at the Ramada for Attorneys Nadal and Schaffer instead of the "luxury accommodations" at the Hilton Garden Inn and Holiday Inn Express. (*Id.*)

Ms. Vittini Cordero has failed to show that it would be clearly inappropriate to

4

require her to pay for the lodging expenses incurred by Attorneys Nadal and Schaffer. Given the distance from New York City to Wilkes-Barre, the Court finds that it was reasonable and necessary for Attorneys Nadal and Schaffer to stay overnight in Wilkes-Barre on June 25, 2012. It is undisputed that it was necessary for them to stay overnight on July 26, 2012, as the hearing lasted two days. The Court also finds that the rates paid at the Hilton Garden Inn Wilkes-Barre and Holiday Inn Express Wilkes-Barre East were reasonable, especially given the unexpected nature of the second night's stay. Accordingly, Ms. Vittini Cordero will be ordered to reimburse Attorneys Nadal and Schaffer $641.56 for the necessary lodging expenses they incurred on behalf of Mr. Font Paulus in this matter.

### 2. Transportation Costs
### a. Bus Fare

Ms. Vittini Cordero also challenges the necessity of $619.50 in bus fare paid by Mr. Font Paulus for two rounds trips between New York and Pennsylvania. (Doc. 31 at 4; Doc. 33 at 5.) First, concerning the $299.50 in bus fare that Mr. Font Paulus seeks for himself, his sister, and her husband for their round trip to Wilkes-Barre for the hearing, Ms. Vittini Cordero claims that she should only be responsible for Mr. Font Paulus's fare ($94.50) because he was the only one of those three required to be at the hearing. (Doc. 33 at 5.) Next, she challenges the $320 in bus fare that Mr. Font Paulus seeks for himself, his sister, and her husband for their post-hearing round trip to Pennsylvania to pick up P.F.V. and for P.F.V.'s return trip to New York. (*Id.* at 6.) She claims that the post-hearing bus trip to Pennsylvania was unnecessary, as her offer to bring P.F.V. to the airport was rejected by Mr. Font Paulus's counsel. (*Id.*)

Ms. Vittini Cordero has not established that it would be clearly inappropriate for the Court to order her to pay for the $619.50 in bus fare incurred by Mr. Font Paulus for the two round trips between New York and Pennsylvania made by himself, his sister, and his sister's husband, as well as P.F.V.'s trip from Pennsylvania to New York. The bus fares for Mr. Font Paulus were reasonable and necessary for him to participate in

5

the June 2012 hearing and pick up P.F.V. *See* 42 U.S.C. § 11607(b)(3) (including "transportation costs related to the return of the child" among "necessary expenses incurred by or on behalf of the petitioner"); *see also Guaragno v. Guaragno*, No. 09-CV-187, 2010 WL 5564628, at * 5 (N.D. Tex. Oct. 19, 2010), *aff'd*, 2011 WL 108946 (N.D. Tex. Jan. 18, 2011) (finding that the costs for two flights–one for trial and one for pickup of child–were "reasonable and necessarily incurred"). Furthermore, the bus fares for Mr. Font Paulus's sister, who testified at the hearing, and her husband, who acted as a guide and translator for Mr. Font Paulus, who neither lives in the United States nor speaks English, were reasonable and necessary in this matter. It is clear that P.F.V.'s bus fare from Pennsylvania to New York, which began her return trip to the Dominican Republic, is also necessary and reasonable. Accordingly, Ms. Vittini Cordero will be ordered to reimburse Mr. Font Paulus $619.50 for these transportation expenses.

**b. Airfare**

Ms. Vittini Cordero also argues that Mr. Font Paulus's round trip flight from the Dominican Republic to the United States was unnecessary because he could have testified at the June 2012 hearing by telephone or video conference. (Doc. 33 at 6.) However, federal courts have awarded successful ICARA petitioners airfare incurred in traveling to and from the United States to appear in court. *See, e.g., Freier v. Freier*, 985 F. Supp. 710, 714 (E.D. Mich. 1997) (awarding $2,422.00 for Petitioner's round trip and minor child's one-way airfare); *Guaragno v. Guaragno*, No. 09-CV-187, 2010 WL 5564628, at * 5 (N.D. Tex. Oct. 19, 2010), *aff'd*, 2011 WL 108946 (N.D. Tex. Jan. 18, 2011). Therefore, as Ms. Vittini Cordero has not shown that it would be clearly inappropriate to require her to pay for Mr. Font Paulus's airfare to and from the United States for the hearing, she will be ordered to reimburse him $555.80 for his reasonable and necessary air travel costs.[1]

---

[1] The Court finds that the $290.00 in airfare for P.F.V.'s return flight to the Dominican Republic, which Ms. Vittini Cordero has not challenged, is a necessary expense under ICARA. Therefore, she will be ordered to reimburse

6

### 3. Interpreting and Translation Costs

Ms. Vittini Cordero maintains that the $1,944.00 for interpreting services and $2,111.51 for translation services incurred by Attorneys Nadal and Schaffer are not recoverable because neither the translators nor the interpreter were court-appointed. (Doc. 33 at 6.) She contends that even if the Court determines that the interpreter fees are recoverable, the $1,944.00 sum requested is "exorbitant given the locality pay of the Wilkes-Barre . . . area" and the $358.00 sum charged by her own interpreter for two days of services. (*Id.* at 7.) She also challenges the necessity of the seven hours spent by the interpreter prior to the hearing, given Attorney Nadal's fluency in Spanish. (*Id.*)

Ms. Vittini Cordero has failed to establish that an order requiring her to pay for interpreting and translation services incurred on behalf of Mr. Font Paulus in this matter would be clearly inappropriate. Many federal courts have awarded translation and translator costs to successful ICARA petitioners. *See, e.g., Guaragno v. Guaragano*, No. 09-CV-187, 2011 WL 108946, at *4 (N.D. Tex. Jan. 18, 2011) (awarding "reasonably and necessarily incurred and adequately documented" translator trial fees and costs of $3,788.75 and foreign document translation fees of $8,702.47); *Blanc v. Morgan*, 721 F. Supp. 2d 749, 768 (W.D. Tenn. 2010) (awarding "translation services . . . and other incidental expenses contemplated by § 11607(b)(3)"); *Neves v. Neves*, 637 F. Supp. 2d 322, 343–44 (W.D.N.C. 2009) (awarding translation costs of $191.25); *Antunez-Fernandes v. Connors-Fernandes*, 259 F. Supp. 2d 800, 816–17 (N.D. Iowa 2003) (awarding translation costs of $717.75, including a translator for trial); *Friedrich v. Thompson*, No. 99-CV-772, 1999 WL 33954819, at *8 (M.D.N.C. Nov. 26, 1999) (awarding expenses for translation of documents from German to English). Therefore, Ms. Vittini Cordero will be ordered to pay Attorneys Nadal and Schaffer $1,944.00 for interpreting services and $2,111.51 for translation services, which were both reasonable and necessary, that they incurred on behalf of Mr. Font Paulus in this matter.

---

Mr. Font Paulus for this expense.

### 4. Court Costs

Ms. Vittini Cordero contends that Mr. Font Paulus should not be awarded court costs on equitable grounds because he filed this action with unclean hands. (Doc. 33 at 7.) She avers that he "filed this action in a vexatious manner and with the knowledge that he had been denied any custody rights in the Dominican Republic," "was fully aware of her whereabouts and those of [P.F.V.] but made no contact with [P.F.V.]," and "is delinquent in his child support payments by . . . approximately $2,000." (*Id.*)

The equitable defense unclean hands defense is inapplicable here. The United States Court of Appeals for the Third Circuit has held that applying "the unclean hands doctrine would undermine the Hague Convention's goal of protecting the well-being of the child, of restoring the status quo before the child's abduction, and of ensuring that rights of custody . . . of one Contracting State are effectively respected in the other Contracting States." *Karpenko v. Leendertz*, 619 F.3d 259, 265 (3d Cir. 2010) (internal citations omitted). Furthermore, court costs are explicitly mentioned in § 11607(b)(3) as "necessary expenses incurred by or on behalf of the petitioner." Therefore, because Ms. Vittini Cordero has not established that requiring her to pay the $350.00 in court costs incurred by Attorneys Nadal and Schaffer on behalf of Mr. Font Paulus would be clearly inappropriate, she will be ordered to reimburse Attorneys Nadal and Schaffer for this necessary expense.

### 5. Post-Hearing Investigatory and Courier Costs

Finally, Ms. Vittini Cordero challenges the $500.00 in post-hearing investigatory and courier costs incurred by Attorneys Nadal and Schaffer. (Doc. 33 at 8; Doc. 31.) She contends that it was not necessary to courier P.F.V.'s passport Mr. Font Paulus, as it was made available to him by the United States Marshals. (*Id.*) She contends that it was unnecessary to hire a private investigator to ensure that she and P.F.V. remained in the Middle District of Pennsylvania, as Mr. Font Paulus's claims that she did not answer his phone calls for three days after the hearing are meritless. (*Id.*) She further contends that it is impossible to determine the basis, nature, or necessity of these fees, as the

8

investigator's invoice neither delineates between the two separate services nor specifies who completed the services.  (*Id.*)

Ms. Vittini Cordero has failed to carry her burden of establishing that it would be clearly inappropriate for the Court to order her to pay $500.00 for the post-hearing investigatory and courier services incurred by Attorneys Nadal and Schaffer.  As these services are reasonable and necessary expenses incurred on behalf of Mr. Font Paulus and related to the return of P.F.V., Ms. Vittini Cordero will be ordered to reimburse Attorneys Nadal and Schaffer the $500.00 they incurred in obtaining them.

For the reasons outlined above, Mr. Font Paulus's motion (Doc. 30) will be granted with respect to costs and Ms. Vittini Cordero will be ordered to pay costs of $5,547.07 to Attorneys Nadal and Schaffer and $1,582.40 to Mr. Font Paulus.

### B.  Attorneys' Fees

The starting point for a court's determination of reasonable attorneys' fees is the lodestar calculation, which entails multiplying the number of hours reasonably expended by each attorney by a reasonable hourly rate.  *See Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983).  The party seeking fees has the initial burden of presenting evidence that the claimed rates and amounts of time are reasonable. *See Pennslyvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 564 (1986).  Once the fee applicant has made this initial showing, "the resulting product is presumed to be the reasonable fee to which counsel is entitled."  *Id.* (quoting *Blum v. Stenson,* 465 U.S. 886, 897 (1984)).  The opposing party then has the burden of making specific objections to the proposed fee by affidavit or brief.  *See Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3d Cir. 1990).  In considering the opposing party's objections, the district court has significant discretion to adjust the lodestar downwards.  *Id.*

The first step in the lodestar calculation is the determination of the number of hours reasonably expended.  The court begins with the claimed hours for which the applicant has evidentiary support, and then makes deductions, if necessary, as follows:

> The district court should exclude hours that are not reasonably expended. Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary. Further, the court can reduce the hours claimed by the number of hours "spent litigating claims on which the party did not succeed and that were 'distinct in all respects from' claims on which the party did succeed." *Institutionalized Juveniles [v. Sec'y of Pub. Wellfare],* 758 F.2d [897, 919 (3d Cir. 1985)] (quoting *Hensley,* 461 U.S. at 440). The court also can deduct hours when the fee petition inadequately documents the hours claimed. *Hensley,* 461 U.S. at 433.

*Id.* (citations omitted). In determining whether the number of hours claimed is reasonable, the court may divide the claimed hours according to the type of work performed. *See, e.g., Maldonado v. Houstoun,* 256 F.3d 181 (3d Cir. 2001). Hours that would not typically be billed to a client cannot be billed to an adversary. *See Pub. Interest Research Group of N.J., Inc. v. Windall,* 51 F.3d 1179, 1188 (3d Cir. 1995).

The second step in the lodestar determination is determining whether the claimed rates are reasonable. The court starts with the market rates prevailing at the time of the petition, which the party seeking fees has the burden of establishing by satisfactory evidence. *See Maldonado,* 256 F.3d 181; *Lanni v. State of N.J.,* 259 F.3d 146, 149 (3d. Cir. 2001). "[T]he court should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Rode,* 892 F.2d at 1183. If there is evidence that the market has established different rates for different categories of legal work, the district court should assign the appropriate rate to each category. *See Loughner v. Univ. of Pittsburgh,* 260 F.3d 173, 180 (3d Cir. 2001).

Once the lodestar has been determined, the Court can adjust the lodestar downwards if the amount is not reasonable in light of the applicant's success-or more properly, his lack thereof-in the litigation. *Rode,* 892 F.2d at 1183. In certain rare instances, the lodestar may also be adjusted upwards to compensate counsel for exceptionally high quality work or for the risks associated with undertaking the litigation. *Id.* at 1184. The party seeking an adjustment has the burden of proving that it is appropriate. *Lanni,* 259 F.3d at 149. "If that party meets the burden of proving that an adjustment is appropriate, the lodestar amount may be increased or decreased at the

10

discretion of the District Court." *Id.*

### 1. Number of Hours Reasonably Expended

Under the lodestar method, the Court must first determine the number of hours reasonably expended by Mr. Font Paulus's counsel in this case. His local counsel, Paige Macdonald-Matthes, Esq., a partner at the Harrisburg, Pennsylvania firm of Serratelli, Schiffman & Brown, PC, requests that she be paid for 54.6 hours spent on this case. (Doc. 31, Ex. B.) She represents that she spent 7.7 hours communicating with counsel, the United States Department of State, Mr. Font Paulus, and the Court; 2.8 hours drafting and revising the Petition and accompanying documents; 5.5 hours preparing for and participating in the initial hearing on May 31, 2012; 36.2 hours preparing for, attending, and participating in the subsequent hearing of June 26 and 27, 2012; and 2.4 hours facilitating the return of P.F.V. after the hearing. (Doc. 31, Ex. B and D.)

Attorney Nadal, an associate in the New York office of Jones Day, requests that she be paid for 54 hours spent on this case. She represents that she spent 20 hours drafting and revising the Petition and accompanying documents; 26 hours preparing for, attending, and participating in the June 2012 hearing; and 8 hours facilitating the return of P.F.V. after the hearing. (Doc. 31, Ex. B; Doc. 35, Ex. C.) Attorney Schaffer, a partner in Jones Day's New York office, requests that she be paid for 45 hours spent in this matter. She represents that she spent 5 hours drafting and revising the Petition and accompanying documents; 37 hours preparing for, attending, and participating in the June 2012 hearing; and 3 hours facilitating the return of P.F.V. after the hearing. (Doc. 31, Ex. B; Doc. 35, Ex. C.) Attorneys Nadal and Schaffer note that the number of hours they seek compensation for (99) is severely reduced from the number of hours they have actually spent on the case (approximately 350). (Doc. 32 at 9; Doc. 31, Ex. B.) They state that they have voluntarily done so to account for possible duplicative efforts among all of Mr. Font Paulus's attorneys and consider Ms. Vittini Cordero's ability to pay the fees in full. (Doc. 32 at 10.)

Having carefully reviewed the billing records of Attorneys Macdonald-Matthes, Nadal, and Schaffer, the Court finds that the hours they have billed and for which they seek fees correspond to the amount of time it would reasonably take to complete the tasks listed.

**2. Reasonable Hourly Rates**

Next, the Court must determine whether the hourly rates claimed by Mr. Font Paulus's attorneys are reasonable. Attorney Macdonald-Matthes, a member of the Pennsylvania bar who has practiced law for twenty years (Doc. 31, Ex. I), claims an hourly rate of $300.00 (Doc. 31 at 9). Attorney Nadal, a member of the New York bar who has practiced law for two years (Doc. 31, Ex. I), claims an hourly rate of $165.00 (Doc. 31 at 9). Attorney Schaffer, a member of the New York bar who has practiced law for twelve years (Doc. 31, Ex. I), claims an hourly rate of $260.00 (Doc. 31 at 9).

Attorneys Nadal and Schaffer have discounted their usual respective hourly rates of $450.00 and $700.00 to match the fee schedule established by Community Legal Services of Philadelphia ("CLS") (Doc. 31, Ex. C), which "has been approvingly cited by the Third Circuit as being well developed and has been found by [the Eastern District of Pennsylvania] to be a fair reflection of the prevailing market rates in Philadelphia." *Maldonado v. Houstoun*, 256 F.3d 181, 187 (3d Cir. 2001) *(citing Rainey v. Phila. Housing Auth.*, 832 F. Supp. 127, 129 (E.D. Pa. 1993)). This Court has previously expressed its belief that although "the Third Circuit has 'never authoritatively resolved the issue' of whether the relevant community is the law firm's community or . . . the community in which the case is actually litigated," "the 'relevant community' for the purpose of determining billing rates . . . includes . . . the entire Middle District and Eastern District of Pennsylvania." *Valenti v. Allstate Ins. Co.*, 243 F. Supp. 2d 200, 206, 207 (M.D. Pa. 2003). Therefore, the Court approves of the rates established by CLS as reasonable market rates to be used in fixing the hourly rates in this case. The Court finds that the hourly rates claimed by Attorneys Nadal and Schaffer are reasonable, as they fall within the range of rates established by CLS for attorneys with similar

12

experience.[2]  The Court also finds that the hourly rate claimed by Attorney Macdonald-Matthes is reasonable, as it is below the range of rates provided by CLS schedule for attorneys with similar experience.

Having found that the number of hours expended by and hourly rate claimed by each attorney are reasonable, the Court must then multiply each attorney's requested hours by her hourly rate to determine her lodestar figure.  Attorney Macdonald-Matthes's figure is $16,380.00 (54.6 hours x $300.00 per hour).  Attorney Nadal's figure is $8,910.00 (54 hours x $165.00 per hour).  Attorney Schaffer's figure is $11,700.00 (45 hours x $260.00 per hour).  When added together, these attorneys' fees, which are "necessary expenses incurred . . . on behalf of the petitioner," total $36,990.00.

Ms. Vittini Cordero challenges these fees on several grounds.  She first contends that "the integrity of awarding . . . fees to counsel who agree to take a case as a pro bono matter is questionable."  (Doc. 33 at 9–10.)  However, she has failed to establish that ordering her to pay attorneys' fees in this matter would be clearly inappropriate, as many federal courts have found counsel representing a successful ICARA petitioner on a pro bono basis are entitled to recover attorneys' fees.  See *Cuellar v. Joyce*, 603 F.3d 1142, 1143 (9th Cir. 2010) ("The fact that [successful ICARA petitioner's] lawyers provided their services pro bono does not make a fee award inappropriate."); *see also Hamidas v. Hamidas,* 720 F. Supp. 2d 183, 209 (E.D.N.Y. 2010) ("[T]he fact that the petitioner in this case was represented by pro bono counsel does not provide a basis for disregarding the Convention's fee provision."); *Sullivan v. Sullivan*, No. 09-545, 2010 WL

---

[2]   The CLS fee schedule provides a range of hourly fees for different levels of post-law school experience.  For an attorney with less than two years of experience, the given range is $165.00–$190.00.  For an attorney with eleven to fifteen years of experience, the given range is $260.00–$335.00.  For an attorney with sixteen to twenty years of experience, the given range is $305.00–$350.00.  (Doc. 31, Ex. C.)  The hourly rates claimed by Attorneys Nadal ($165.00) and Schaffer ($260.00) are at the low end of the ranges given for their respective experience levels.  The hourly rate claimed by Attorney Macdonald-Matthes ($300.00) is below the range given in the schedule for an attorney with her experience level.

1651994, at *1 (D. Idaho Apr. 20, 2010) ("[E]ven where a [successful ICARA] case is taken on a pro bono basis, the Petitioner is still entitled to recovery of reasonable attorney fees.") Accordingly, the Court rejects Ms. Vittini Cordero's argument that it would be clearly inappropriate to award attorneys' fees to Attorneys Nadal, Schaffer, and Macdonald-Matthes because they represented Mr. Font Paulus on a pro bono basis.

Ms. Vittini Cordero also claims that an award of $36,900.00 in attorneys' fees is clearly inappropriate because it would render her, a minimum wage earner and single mother of two children, unable to provide for herself or her children. (Doc. 33 at 9, 18.) "The court may reduce a fee award in a Hague Convention case if it prevents the respondent-parent with straitened financial condition from caring for his child." *Saldivar v. Rodela*, No. 12-CV-76, 2012 WL 4497507, at *15 (W.D. Tex. Oct. 1, 2012) (citing *Rydder v. Rydder*, 49 F.3d 369, 374–75 (8th Cir. 1995); *Whallon v. Lynn*, 356 F.3d 138, 139–40 (1st Cir. 2004)). "[E]ven in cases where the financial status of the respondent is considered, the fee award is sometimes reduced, but not entirely denied." *Sullivan v. Sullivan*, No. 09-CV-545, 2010 WL 1651994, at *2 (D. Idaho Apr. 21, 2010) (citing *Rydder*, 49 F.3d 369, 374–75 (8th Cir. 1995) (reducing fee award by 46% because of respondent's "straitened financial circumstances"); *Berendsen v. Nichols*, 938 F. Supp. 737, 739 (D. Kan. 1996) (reducing fee award by 15% in light of respondent's financial status); *Willing v. Purtill*, No. 07-CV-1618, 2008 WL 299073, at *3–4 (D. Or. Jan. 31, 2008) (reducing fee award by 15% in light of respondent's financial status)); *see also Saldivar*, 2012 WL 4497507, at *16 (reducing fee award by 55% in light of respondent's financial status). "A reduction on the account of straitened financial condition, however, will not be applied to litigation costs and out-of-pocket expenses . . . ." *Saldivar*, 2012 WL 4497507, at *16 (citing *Rydder*, 49 F.3d at 374; *Whallon*, 356 F.3d at 139).

Although Ms. Vittini Cordero claims that an order requiring her to pay $36,990.00 in attorneys' fees would be "clearly inappropriate" due the financial strain it would place her and her minor children under, she has failed to provide any evidentiary support for this position. The record is devoid of any evidence or documentation showing Ms. Vittini

Cordero's employment status, income, or assets. Nor does it contain any evidence that she has two minor children and is their sole provider. Therefore, as the Court cannot entertain Ms. Vittini Cordero's unsubstantiated assertions as to her financial situation, she has not established that ordering her to pay attorneys' fees is clearly inappropriate or that a reduction in fees is warranted in this matter.

Accordingly, Mr. Font Paulus's motion (Doc. 30) will be granted with respect to attorneys' fees. Ms. Vittini Cordero will be ordered to pay $16,380.00 in fees to Attorney Macdonald-Matthes, $8,910.00 in fees to Attorney Nadal, and $11,700.00 in fees to Attorney Schaffer.

## **CONCLUSION**

For the foregoing reasons, the Court will grant Mr. Font Paulus's Motion for an Award of Attorneys' Fees and Costs for Return of Child Pursuant to Convention Article 26 and 42 U.S.C. § 11607. (Doc. 30.) Ms. Vittini Cordero will be ordered to pay costs of $5,547.07 to Attorneys Nadal and Schaffer and $1,582.40 to Mr. Font Paulus. She will also be ordered to pay $16,380.00 in fees to Attorney Macdonald-Matthes, $8,910.00 in fees to Attorney Nadal, and $11,700.00 in fees to Attorney Schaffer.

An appropriate order follows.

January 31, 2013 /s/ A. Richard Caputo
Date                                              A. Richard Caputo
                                                       United States District Judge